Huey E. McGraw

*v.*

Wade Hash, *et al.*

(No. 10017)

Submitted September 21, 1948.  Decided

December 7, 1948.

*Kingdon & Kingdon* and *Arthur R. Kingdon,* for plaintiff in error.

*Townsend & Townsend, Hillis Townsend,* and *John T. Keenan,* for defendants in error.

Kenna, Judge:

Huey (Dutch) McGraw brought this action of trespass on the case in the Circuit Court of Wyoming County

against Wade Hash, Pete McMullin, Stirley Cook, James S. Williams and Henry Parham, seeking a recovery of $5,000.00 damages because the defendants wrongfully procured the termination of his contract of employment with West Gulf Coal Company at its Maben operation on the 22nd day of October, 1945. The defendants filed their joint demurrer to the declaration which was overruled, after which the defendants, Wade Hash, James S. Williams and Henry Parham filed their special plea in bar followed by an amended declaration purporting to increase the stated damage to $10,000.00 and a pre-trial order. The case then went to a hearing on the merits, the other two defendants, Pete McMullin and Stirley Cook, tendering no pleas in writing and consequently going to trial on the general issue alone. There are no questions of procedure raised by the assignments of error but all have to do with the plaintiff's demurrer to the evidence hereafter dealt with.

Upon the plaintiff demurring to the evidence of the defendants and the case's submission to the jury for a conditional verdict, the jury returned a verdict for the plaintiff in the sum of $3,000.00, judgment of course to be determined by the trial court's finding on the questions raised by the demurrer to the evidence. Upon considering the demurrer to the evidence the Circuit Court of Wyoming County found in favor of the defendants and dismissed the plaintiff's action. Upon the petition of the plaintiff below this Court granted the writ of error now under consideration.

The questions presented are, first, whether the conduct of one or more of the defendants caused the termination of the plaintiff's employment and, second, if so, was that conduct wrongful?

Upon a demurrer to the evidence the case is considered on substantially the same basis as it is upon a motion to strike the evidence of the opposing side and direct a verdict in favor of the movant, with all properly con-

troverted questions of proof decided against the party demurring. *Niland v. Monongahela West Penn Public Service Co.*, 125 W.Va. 231, 24 S.E. 2d 83; *Conner v. Jarrett*, 120 W.Va. 633, 200 S.E. 39. We will bear this rule in mind in making our statement of fact.

In March, 1945, Huey McGraw was employed as a coal loader by the West Gulf Coal Company at its Maben operation in Wyoming County. On July 9 of the same year he was promoted to the position of "fire boss". Under the union's collective bargaining agreement with the West Gulf Coal Company the employment of McGraw by that company automatically made him a member of Local Union No. 8152 of the United Mine Workers of America. By his promotion to the supervisory position of fire boss, by the terms of the same agreement his membership was automatically ended. On Saturday, October 6, McGraw was told by J. B. Brown, the mine foreman under whom he worked, that he was then through his employment as a fire boss and to report for duty as a coal loader on the following work day, which was Monday, October 8. On October 8 McGraw reported for work at the proper hour and found that a sympathetic strike had been called to support the formation of a "foremen's union" and that none of the coal loaders were going to work that day. Upon reporting to Brown he was told that one of the section foremen named Ferguson by reason of sickness was unable to work that day and that he, McGraw, could occupy the position if he wished, which he did.

On October 22 McGraw reported for work and was told by his foreman, J. B. Brown, that he had been "blackballed" by the local union and that since the members of the local union would not take the mantrip to work if McGraw were allowed to work as a nonmember of the local, nothing could be done except to forbid McGraw from working inside that day. This, of course, amounted to "firing" him.

The defendants now contend that when Brown told McGraw on October 6 to report for work as a coal loader he was automatically restored to membership by the local union; that when he reported for work on October 8 he reported as a coal loader and that although he may have worked in the place of Ferguson, who was a foreman, the actual work he performed was that of a day laborer and consequently his having been carried on the books of the company for that day as a foreman is merely a pretext. They say that if this Court should believe the local union did in fact expel McGraw, that expulsion was justified by his conduct and he was not a member when he reported on the morning of October 22. McGraw meets this contention by referring to the collective bargaining agreement between the company and the local which reads as follows:

"It is agreed that as a condition of employment all employees shall be members of the United Mine Workers of America, except in those exempted classifications of employment as provided in this contract.

"With reference to the sentence in the enabling clause (above) stating that all employees shall 'be' members of the United Mine Workers of America, the word 'be' is used in the future tense, and the clause so noted becomes effective and operative after an individual has been employed and starts to work."

We are of the opinion that under a demurrer to the evidence it is not necessary to consider the rather involved question concerning whether McGraw was properly expelled from the local union, the material question, to our minds, being why was McGraw told by the mine foreman on the morning of October 22 that he could not work for West Gulf Coal Company as a coal loader? On this question of fact there is undoubtedly positive conflict between the testimony of the plaintiff and that of

the defendants. J. B. Brown, the company's mine foreman, states that the mine committee told him that the men would not go to work that morning with McGraw and therefore that he told McGraw that he could not work. The defendant, Henry Parham, who was the spokesman for the mine committee, states that he told Brown that the men would not work with McGraw until he became reconciled with the union and that he, Parham, wanted some word sent to the men through him that would satisfy them that their objection to McGraw was receiving serious consideration so that they would go to work that morning with that assurance, regardless of McGraw. Parham testifies that the mine foreman voluntarily told him, in effect, that it was unnecessary to leave the matter in doubt because no one man was going to stop that mine and that he immediately discharged McGraw. This is the testimony on this question in its entirety.

It is to be remembered that this mine had been idle for two weeks and consequently that the mine foreman's production record had suffered. The number of miners employed at Maben is not revealed, but with section foremen subordinated to the mine foreman doubtless they were considerable. With them on one side of a dispute with a single individual and the decision left to the mine foreman, the temptation to cut the Gordian knot would certainly be in the offing, sufficiently at least, we believe, to say that on a demurrer to the evidence that which conflicts with Brown's statement to the effect that he did not discharge McGraw of his own volition must be given effect. Consequently, the defendants are discharged from direct responsibility in the termination of McGraw's employment. It follows that the Circuit Court of Wyoming County committed no error in overruling the demurrer of the plaintiff to the evidence and dismissing the case and its judgment must be affirmed.

Furthermore, in the event that what we regard as the initial consequential question were decided in favor of

the plaintiff below, other questions would be reached concerning which there are also issues of fact necessary to resolve in favor of the defendants below, the outstanding example of which is whether the local union expelled McGraw and ordered its members not to work with him. The position of the plaintiff is that after he had gone to work on October 8 as a section foreman the local union did, in violation of its contract, expel him for conduct "unloyal" to organized labor. The defendants contend, first, that that is not true, and second, that if it were true, as stated, the expulsion would have been in every respect regular. No record minutes of the meetings of the local were produced and, without going into unnecessary detail in recounting the conflict in testimony, the testimony of the persons who attended these meetings fails to conform either in substance or in the method of procedure. In fact it is an involvement to piece the whole together in order to work an agreement concerning time and place. While it is true that their collective bargaining contract with the coal company controls the membership of the local both as to admission and disqualification more effectively than does the action of the union itself, we are not now attempting to decide whether McGraw was at any stated time a regular member of Local Union 8152 of Maben of the United Mine Workers of America and are deciding only that on the basis of the record before us, the defendants were not directly responsible for the termination of his employment on October 22, 1945.

On the basis of the foregoing the judgment of the Circuit Court of Wyoming County is affirmed.

*Affirmed.*